GUARANTY TRUST CO. OF NEW YORK et al. v. BETTENDORF AXLE CO.

(Circuit Court of Appeals, Eighth Circuit. May 3, 1915. Rehearing Denied July 24, 1915.)

No. 4297.

PATENTS ☞328—INVENTION—UNDERFRAME FOR RAILWAY CARS.

The Hansen patent, No. 650,792, for an improvement in underframes for railway cars, claim 1, is void for lack of invention in view of the prior art.

Appeal from the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Suit in equity by the Guaranty Trust Company of New York and another against the Bettendorf Axle Company. Decree for defendant, and complainants appeal. Affirmed.

Alfred W. Kiddle, of New York City (Wilson, Grilk & Wilson, of Davenport, Iowa, and Wylie C. Margeson and William F. Bissing, both of New York City, on the brief), for appellants.

James R. Sheffield, of New York City (Ramsay Hoguet, of New York City, and Lane & Waterman, of Davenport, Iowa, on the brief), for appellees.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. This is an appeal from a decree dismissing, on final hearing, the suit of the Guaranty Trust Company and the Pressed Steel Car Company against the Bettendorf Axle Company, for infringement of claim 1 of patent, No. 650,792, issued May 29, 1900, to John M. Hansen for an improvement in underframes for railway

cars. The trial court held there was no infringement, and dismissed the bill.

A complete railroad car consists, generally speaking, of three parts; the trucks or running gear, the underframe which rests on the trucks, and the car box or body carried on the underframe. The claim in suit is as follows:

"A metallic underframe for cars, comprising bolsters, center sills extending from bolster to bolster and rising above the same *to receive the floor nailing-strips and restrain or prevent sidewise movement of the car-body on the underframe*, and draft-rigging beams or sills alined with said center sills in length only, substantially as described."

The words we have italicized were inserted in the claim as first presented to meet the ruling of the Patent Office that, unless the object of the center sills rising above the bolsters was specified, it would appear that the claim was met by patents 223,437, January 13, 1880, to Cushing, and 554,641, February 18, 1896, to Bagshawe. Originally the specifications stated that in practice the center sills stood about five inches above the upper flanges of the draft-rigging beams to provide for the nailing stringers and to increase the bearing surface for the floor, and that they effected those purposes without in any wise decreasing the capacity of the car body. When the claim was amended to meet the objection of the Patent Office the applicant also interpolated in his specifications the following:

"Such projection of these center sills affords an anchorage for the car-body which restrains or prevents its sidewise movement on the underframe, and, further, adds materially to the strength of the sills without occupying space that could be advantageously used otherwise."

The elements of the claim are: (1) Bolsters; (2) center sills extending from bolster to bolster and rising above the same; (3) draft-rigging beams or sills aligned with the center sills in length only. Metallic underframes for cars, with transverse bolsters, longitudinal center sills and draft-rigging beams or extensions of the center sills to the ends of the underframes were all old. It was old to have detachable draft-rigging beams aligned with the center sills in length only, though it is difficult to see what particular purpose such limited alignment serves except a lessening of the weight. The only feature of the claim for which there can be any color of novelty is in raising the center sills above the bolsters into the floor stringer space. That was the view of the Patent Office in the citations of the Bagshawe and Cushing patents. But even this feature is anticipated by the patent to Westinghouse, No. 615,118, November 29, 1898, for an improvement in center sills. True, the sill there described runs from end to end of the car frame, and between the two metal beams composing it is a timber filling, but in respect of its rising above the bolster and the offices performed by that particular position it is like Hansen's. There is no difference in principle or function between placing wooden stringers along the outside of the metal beams comprising the Hansen center sill, as should be done to secure the anchorage claimed by him, and placing a wooden stringer between them as with Westinghouse. The car floor is nailed to the upper surface of the Hansen stringers. Westinghouse says his wooden stringer or filling "also provides a bed to

which the flooring of the car can be secured, along its longitudinal center line." But aside from this, Westinghouse provides alternatively for dispensing with the stringer between the beams and using distance or spacing pieces to keep them apart. He also specifies a method of saddling his center sill beams upon the bolsters, and so, like Hansen's they may be said to rise from the bolster. In the proceedings of the Master Car Builders Association in 1897 the value of having draft-rigging sills detachable from the center sills was plainly expressed.

It is urged that anticipation is not shown by finding the elements of the claim separately in old structures. But in respect of the particular forms and arrangements of the center sills and the draft-rigging sills of the claim in suit there is no coaction between them toward a common, new, and useful result. In the sense of the patent law no new result is obtained by their assemblage in a single structure. Each performs its original work in the underframe separately from the other. The draft-rigging sills are aligned in length with the center sills, are detachable when damaged, and are reduced in dimensions to lessen weight, but such things have no co-operative bearing upon the functions claimed for the height of the center sills above the bolsters. We think the claim in suit is invalid.

Affirmed.